```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
STANLEY A. FERGUSON,          )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No. 10-2113 (RWR)
                              )
GREGORY T. LONG, et al.,      )
                              )
        Defendants.           )
_____)
```

## MEMORANDUM OPINION

This case stemmed from a perfect storm of missteps on both sides, with most of them occurring in the bureaucracy responsible for the Thrift Savings Plan ("TSP"). The result is that the undisputed last wishes of a federal employee who relied upon the repeated assurances of the bureaucracy that her husband would be her beneficiary for a $287,000 TSP account will be wholly dishonored. It is a sad result for the surviving spouse of 12 years and a blot on the record of the TSP program.

Plaintiff Stanley Ferguson filed this complaint seeking an order directing the Federal Retirement Thrift Investment Board ("the Board") to provide him with the proceeds of a Thrift Savings Plan ("TSP") account belonging to Ferguson's deceased wife, Tanya Ferguson. Gregory Long, the executive director of the Board, has moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss, or alternatively for summary

-2-

judgment, arguing that Stanley[1] is not a legal beneficiary with standing to bring a claim for TSP benefits.[2]  Because the facts are not in dispute and Stanley is not entitled to bring a claim for his deceased wife's TSP benefits, the complaint will be dismissed for lack of subject matter jurisdiction.

BACKGROUND

In October 1993, Tanya, an employee of the U.S. Department of the Treasury, participated in the TSP and properly filed with her employer a valid designation of beneficiary form ("TSP-3 form") designating as her beneficiaries her father, defendant Harold Koch, and defendant Marissa Shunn.[3]  (Def. Long's Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Ex. A.)[4]  The Board later changed its regulations to require that TSP-3 forms be filed directly with the Board rather than with the participants' employers.  Thus, in 1998, the Board directed Treasury and other participating agencies to forward to the Board all TSP-3 forms employees had previously filed.  Treasury did not do so with

---

[1] The Fergusons' first names will be used for ease of identification.

[2] Defendant Marissa Shunn also has moved to dismiss the complaint.  Because resolution of Long's motion disposes of the case, Shunn's motion need not be addressed.

[3] According to the Board, at the end of business on April 1, 2011, Tanya's TSP account balance was $287,347.82.  (Def.'s Mem. in Supp. of Mot. to Dismiss, at 4.)

[4] Stanley does not dispute the facts set forth in the Board's motion to dismiss.  (Pl.'s Opp'n at 1.)

-3-

Tanya's form for over 12 years. (Def.'s Mem. at 3 & n.2.) As a consequence, the TSP annual statement that the Board sent to Tanya erroneously declared in January of each calendar year from and before 2007 through 2010: "You have not designated a beneficiary. Upon your death, your TSP account will be paid[] to your surviving spouse[.]" (Compl. ¶¶ 9-10, 12, 14.) Each annual statement also asked: "Please review this statement for accuracy, as the information in it is considered correct unless you notify us." (Id.; Pl.'s Mem. of P. & A. in Opp. to Mots. to Dis. ("Pl.'s Mem."), Exs. 1, 2.) Tanya apparently reported no errors.

Stanley and Tanya were married in January 1998, over four years after she filed the TSP-3 form. (Compl. ¶ 7.) Treasury, twelve years late, mailed a copy of Tanya's 1993 TSP-3 form to the Board in May 2010. (Def.'s Mem. at 3.) That triggered a string of events. The TSP-3 form reflected Tanya's last name in 1993 (Koch). The last name reflected on her TSP account in 2010, though, was her married name (Ferguson). Thus, the Board sent Tanya a letter dated May 26, 2010 stating it had received her TSP-3 Designation of Beneficiary form, but it could not process the form. It explained that "[t]he participant's name on [the form did] not match the name on the TSP account[.]" (Pl.'s Mem., Ex. 3.) The letter further stated that "if you do not have a form TSP-3 on file, death benefits will be paid according to the statutory order of precedence[,]" which,

-4-

according to the previous TSP annual statements, would be her surviving spouse.  (Compl. ¶¶ 12-14.)

Tanya, of course, had not sent the Board any designation of beneficiary form.  She feared that someone had stolen her identity and was trying to steal her TSP funds by sending in a change of beneficiary form.  (Pl.'s Mem., Ex. 4 at 3:11-15, 6:7-13.)  Tanya promptly telephoned a participant services representative ("PSR") of the Board on June 2, 2010.  The PSR explained that the Board had just received Tanya's October 1993 TSP-3 form and was notifying her why it was being rejected and would not be processed.  Tanya asked who her current beneficiary was.  The PSR erroneously declared that Tanya did not have a beneficiary listed for her account, and confirmed that the proceeds of her account would be paid to Stanley as her surviving spouse if she died.  In discussing the question of the most current designation of beneficiary form, Tanya said "I did one that just said 'Cancel all,' so that that would just make it be my spouse."[5]  The PSR told Tanya, erroneously, that since the form the Board had just received would not be processed, "you don't need to worry about that."  (Id. at 3:16-19; 4:2-13; 5:19-6:6; Compl. ¶¶ 15-16.)  So, she didn't, even though the

---

[5] The Board asserts after conducting a thorough search, and the plaintiff does not contest, that no record of such a designation of beneficiary form filed by Tanya exists.  (See Joint Supp. Memorandum at 1-2.)

-5-

Board's May 26, 2010 letter advised her "[t]o ensure that death benefits are paid in a timely manner and in accordance with your current wishes, you should resubmit a corrected form TSP-3, Designation of Beneficiary."  (Pl.'s Mem., Ex. 3.)  In fact, the Board did match the 1993 form's other identifying information with Tanya's TSP account and, without notifying Tanya, did process the 1993 form and recognize it as valid.

Tanya passed away three weeks later.  (Compl. ¶ 7.)  Stanley filed a claim for Tanya's TSP account funds.  (Id. ¶ 18.)  In August 2010, the Board notified Stanley that Tanya in fact did have a valid TSP-3 form in her file, and that the Board would provide the proceeds of her account to Shunn and Koch, her designated beneficiaries.  (Id. ¶ 17.)  Stanley protested the denial of his claim, and the Board rejected Stanley's protest.  (Id.. ¶¶ 18-20.)

Stanley filed this action seeking an order prohibiting the Board from disbursing the proceeds of Tanya's account to Shunn and Koch, and directing the Board to pay the proceeds of the account to Stanley.[6]  The Board has moved to dismiss, arguing that the complaint failed to allege sufficiently a waiver of

---

[6] Stanley's complaint does not allege a statutory or common law basis for his cause of action, but his opposition to Long's motion to dismiss or for summary judgment asserts that 5 U.S.C. § 8477(e)(3)(B)(ii) and (C) allows him to file this action as a "beneficiary" of Tanya's TSP.  (Pl.'s Opp'n at 7-8.)

sovereign immunity because Stanley is not a designated beneficiary.  Stanley opposes.

## DISCUSSION

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "'Before a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims.'"  Sierra Club v. U.S. Environmental Protection Agency, Civil Action No. 08-424 (RWR), 2012 WL 1008680, at *2 (D.D.C. March 27, 2012) (quoting Cornish v. Dudas, 715 F. Supp. 2d 56, 60 (D.D.C. 2010) (internal quotation omitted)).  "A plaintiff bears the burden to establish that the court has subject matter jurisdiction over the claims in the complaint." Sierra Club, 2012 WL 1008680, at *2 (citing Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008).  "If the plaintiff fails to do so, the court must dismiss the action."  Sierra Club, 2012 WL 1008680, at *2 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citing Ex parte McCardle, 74 U.S. 506, 514 (1868))).  "'Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion.'"  Nat'l Treasury Employees Union v. Whipple, 636 F. Supp. 2d 63, 68 (D.D.C. 2009) (quoting Jin v. Ministry of State Sec., 475 F. Supp. 2d 54, 60 (D.D.C.

-7-

2007)). "The court may look beyond the complaint, but 'must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party.'" Whipple, 636 F. Supp. 2d at 68-69 (quoting Short v. Chertoff, 526 F. Supp. 2d 37, 41 (D.D.C. 2007)).

"'[S]overeign immunity is jurisdictional' and '[a]bsent a waiver, . . . shields the Federal Government and its agencies from suit.'" Cohen v. United States, 650 F.3d 717, 723 (D.C. Cir. 2011) (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988), and Federal Housing Administration v. Burr, 309 U.S. 242, 244 (1940))). "'It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" Bloch v. United States Census Bureau, 754 F. Supp. 2d 15, 17 (D.D.C. 2010) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)).

Long argues that Stanley failed to allege a viable waiver of sovereign immunity. According to Long, to the extent that Stanley has alleged that the Federal Employees Retirement Systems Act ("FERSA") waives the Board's sovereign immunity, that waiver applies in limited circumstances only -- circumstances that Stanley's complaint fails to allege. The statute that purportedly provides the waiver of sovereign immunity in this

-8-

case provides, in relevant part, that a "civil action may be brought in the district courts of the United States . . . by any participant or beneficiary . . . to recover benefits of such participant or beneficiary . . . , to enforce any right of such participant or beneficiary under such provisions, or to clarify any such right to future benefits under such provisions[.]" 5 U.S.C. § 8477(e)(3)(C).  Long argues that Stanley is neither a beneficiary nor a participant, and therefore is unable to bring this action under that section.

The FERSA defines beneficiary as "an individual (other than a participant) entitled to payment from the Thrift Savings Fund under subchapter III of this chapter [5 U.S.C. §§ 8431-8440f.]" 5 U.S.C. § 8471(1).  An employee or member designates a beneficiary by having a "signed and witnessed writing" submitted to the Board's Office before the participant's death.  5 U.S.C. § 8424(d).  Under § 8424(d), benefits "shall be paid to the individual or individuals surviving the employee or Member and alive at the date title to the payment arises in the following order of precedence, and the payment bars recovery by any other individual: First, to the beneficiary or beneficiaries designated by the employee or Member in a signed and witnessed writing[.]" 5 U.S.C. § 8424(d).  If an employee or member dies "with no designated beneficiary and is survived by a spouse, the spouse may maintain the portion of the . . . account to which the spouse

-9-

is entitled[.]"  5 U.S.C. § 8433(e)(2); see also 5 U.S.C. § 8424(d).

Here, it is undisputed that the 1993 TSP-3 form designating Shunn and Koch as beneficiaries was properly signed, witnessed and received by the Board before Tanya's death.[7]  Stanley argues that he too should be considered a beneficiary, because he would be entitled to payment but for the Board's assertions that Tanya did not have an active designation of beneficiary form on file. He argues that the doctrine of equitable estoppel should be applied against the Board to preclude its decision to award the proceeds of the account to Shunn and Koch.

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases."  Heckler v. Cmty. Health Svces., 467 U.S. 51, 59 (1984).  "A party attempting to apply equitable estoppel against the government must show that '(1) there was a definite representation to the party claiming estoppel, (2) the party relied on its adversary's conduct in such a manner as to change his position for the worse, (3) the party's reliance was reasonable[,] and (4) the government engaged in affirmative misconduct.'"  Keating v. FERC, 569 F.3d 427, 434 (D.C. Cir. 2009) (quoting Morris Communic'ns, Inc. v. FCC, 566 F.3d 184, 189 (D.C. Cir. 2009)).  The application of equitable estoppel against

---

[7] See Pl.'s Mem. at 11 (conceding that the 1993 TSP-3 form is valid).

-10-

"the government must be rigid and sparing." ATC Petroleum Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988); see also Int'l Union v. Clark, Civil Action No. 02-1484 (GK), 2006 WL 2598046, at *12 (D.D.C. Sept. 11, 2006) (stating that "[t]here is a clear presumption in this Circuit against invoking the [estoppel] doctrine against government actors in any but the most extreme circumstances").

    The Board notes that it made no misleading communications directly to Stanley. The annual statements indicating that Tanya had not designated a beneficiary were sent to Tanya, not Stanley. The telephone call containing the inaccurate information about Tanya's TSP-3 was between a PSR and Tanya, not Stanley. The Board thus notes that Stanley cannot claim that he changed his position for the worse based on any direct communication from the Board, and that only Tanya, not he, could have changed his putative beneficiary position one way or the other. But with nary an apology for the bureaucracy's bungling, the Board makes the breezy claims that Tanya's reliance on what the Board told her was unreasonable, and that she did not act diligently. It is difficult to fathom how more diligently one could have responded to a Board letter mailed on May 26 than to have called the Board on June 2. It is even harder to imagine why a reasonable person should have distrusted annual written declarations from the Board throughout the twelve years of her marriage - - confirmed orally

-11-

by a Board representative - - that her spouse would receive her account proceeds upon her death.  There was nothing in those declarations about which Tanya needed to take any diligent action.

The difficulty here is that Stanley cites to no precedent in which a court estopped the Board from paying TSP death benefits to a person identified in a valid TSP-3 form as a beneficiary and directed the Board to pay the benefits to someone else.  Office of Personnel Management v. Richmond, 496 U.S. 414, 424 (1990), recognizes the command of the Appropriations Clause of the Constitution that no money may be paid from the Treasury except as authorized by Congress.  It seems equally true that no money may be paid from federal employee savings funds established by Congress except as authorized by Congress.  "[J]udicial use of the equitable doctrine of estoppel cannot grant [plaintiff] a money remedy that Congress has not authorized.  See INS v. Pangilinan, 486 U.S. 875, 883 (1988) ('Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law')."  Id. at 426.  Stanley has presented no evidence that Congress has by law vested in the Board the discretion to make distributions contrary to valid TSP-3 forms where the Board is satisfied that the equities demand it.  Cf. Richmond, 496 U.S. at 429 (citing Congressional act granting the HHS secretary the discretion to waive a statutory

application deadline missed by an applicant because of misinformation provided by an HHS employee).

> Indeed, it would be most anomalous for a judicial order to require a Government official, such as the officers of OPM, to make an extrastatutory payment of federal funds.  It is a federal crime, punishable by fine and imprisonment, for any Government officer or employee to knowingly spend money in excess of that appropriated by Congress.  See 31 U.S.C. §§ 1341, 1350.  If an executive officer on his own initiative had decided that, in fairness, [plaintiff] should receive benefits despite the statutory bar, the official would risk prosecution.  That [plaintiff] now seeks a court order to effect the same result serves to highlight the weakness and novelty of his claim.  The whole history and practice with respect to claims against the United States reveals the impossibility of an estoppel claim for money in violation of a statute."

Richmond, 496 U.S. at 430.  Even if his estoppel claim were possible, Stanley has presented no authority demonstrating that the bureaucratic bungling that occurred here rises to the level of affirmative misconduct.

## CONCLUSION

Sadly for him, Stanley has not demonstrated that he has standing as a beneficiary of Tanya's plan who would be entitled to bring an action against the Board under FERSA, nor has he shown that the principles of equitable estoppel can apply in this case to make him a beneficiary.  Therefore, Stanley has not established a waiver of sovereign immunity for the claim he raises, and this case will be dismissed for lack of subject matter jurisdiction.  An appropriate final order accompanies this memorandum opinion.

-13-

SIGNED this 16th day of August, 2012.

```
                          _____/s/_____
                          RICHARD W. ROBERTS
                          United States District Judge
```